THE HOME BANK, Appellant, v. ALEXANDER A. TOWSON, Respondent.

St. Louis Court of Appeals, December 10, 1895.

1. **Instructions:** NOT FOUNDED UPON EVIDENCE. An instruction which is not warranted by the evidence is erroneous.

2. **Practice, Appellate:** NONPREJUDICIAL ERROR. An appellant can not avail himself of error in his own favor.

*Appeal from the Knox Circuit Court.*—HON. BEN E. TURNER, Judge.

AFFIRMED.

*O. D. Jones* for appellant.

*George R. Balthrop* for respondent.

BIGGS, J.—The action is to recover the amount of a protested bill of exchange. The suit was originally against the defendant and one Dalgarn. The latter died, and the plaintiff dismissed as to him. The bill of exchange was payable at sight, and was drawn by Dalgarn on Scarborough & Company, New York. It was discounted by plaintiff and the proceeds paid to Dalgarn. It was afterward protested for nonpayment. The plaintiff seeks to hold the defendant on the ground that the latter and Dalgarn were engaged in the poultry business and were conducting it in Dalgarn's name, and that the bill of exchange pertained to the business of the firm. The petition also sets forth the method adopted in carrying on the business, which need not be stated here and which is material only in so far as it tends to prove the alleged partnership. The answer is

a general denial.    The cause was submitted to the court without a jury.    There was a judgment for the defendant, and the plaintiff has appealed and complains of the action of the court as to the instructions.

The plaintiff made no direct or positive proof of the alleged copartnership, but its evidence tended to prove that fact inferentially.    It seems that the defendant was in the grocery business in Knox City, and Dalgarn was buying and selling poultry in the same town. The latter did his banking business through the plaintiff bank.    The evidence for plaintiff tended to prove that the business was conducted in Dalgarn's name, and that in payment of poultry purchased he gave orders on the defendant which were paid at his store either in money or trade; that, at the time Dalgarn commenced business, the defendant instructed the plaintiff to place to his (defendant's) credit in bank, or send to him at his store, the proceeds of all sight drafts by Dalgarn against shipments of poultry, and that on the faith of this the plaintiff discounted the bill in question which was drawn on Scarborough & Company, to whom Dalgarn had on that day consigned a lot of poultry.    The plaintiff permitted Dalgarn to retain the bill of lading, and, for some reason not explained in the record, the consignee did not receive the shipment and therefore refused to pay the draft.

On the other hand, the defendant denied that he was a partner of Dalgarn.    He admitted that Dalgarn gave orders on him in payment of purchases, but that this arrangement was entered into by him for the sole purpose of bringing the holders of the orders to his store, thus affording him an opportunity to sell them goods.    He denied positively that he had any interest in the profits of the poultry business, or that he had made himself liable in any way for Dalgarn's obligations.    He also admitted that, at the beginning of business by Dal-

garn, he requested the plaintiff's cashier to place the proceeds of sight drafts drawn by Dalgarn to his (defendant's) credit in bank, or to send the money to his store, but that subsequently to this, and prior to the discount of the draft in question, he had some controversy with the bank about one of Dalgarn's drafts which had been misplaced, and that he then informed the officials of the bank that he did not care to have any further business with them.

The plaintiff asked the following instruction, which the court refused to give, to wit:

"The court sitting as a jury to try the case declares the law to be, that if it found as facts that defendant and Dalgarn were associated in the business of dealing in eggs, poultry, etc., as alleged in the petition; *that defendant authorized Dalgarn to buy such produce* and give orders on him for it, and honored such orders and thus paid for such produce, and, when Dalgarn shipped the same, authorized him to procure on bill of lading of such produce sight drafts, and authorized plaintiff to advance the money thereon, and, to protect himself, required said Dalgarn to either put the proceeds of said sight drafts to his credit in bank or to bring or turn over the money to him at his place of business, and that that mode of dealing between defendant and Dalgarn was still used by them until the date May 10, 1893, when the sight draft filed with the petition was procured by Dalgarn and cashed by the plaintiff in the ordinary course of such business as theretofore; and that plaintiff caused said sight draft to be presented to Scarborough & Company, the parties on whom drawn, and they refused payment of it, and notice of such refusal in writing was given Dalgarn, then the law implies the obligation of Dalgarn and defendant, whose agent or partner in that respect Dalgarn was, to have funds in the hands of the person on whom drawn to

pay the same, and, on default of having such money so on hands to be paid by their drawee and the payment of the same, to refund the proceeds of said sight draft so procured by them on demand to plaintiff, and the plaintiff is entitled to recover.''

The form of the instruction is subject to criticism, but that may be put aside. There are, however, other objections which are more serious. The instruction states certain facts and, if those are found to be true, it asks the court to declare as a matter of law that Dalgarn was either the agent or partner of defendant and that in either case the finding should be for the plaintiff. The instruction is obscurely written, but this is certainly its purport. A serious objection is that it authorizes a recovery on grounds not stated in the pleadings or warranted by the evidence. It is nowhere stated in the pleadings, nor does the evidence tend to show, that the defendant was the principal in the poultry business and that Dalgarn conducted it as his agent. Another objection is that there is no evidence that Dalgarn bought poultry under the orders or directions of defendant. The only witness introduced by the plaintiff, who professed to have any actual knowledge of the relations existing between the parties, was the widow of Dalgarn. She testified that the business belonged to her husband, and that the only connection that the defendant had with him was the arrangement to cash orders. Hence that clause in the instruction in italics has no support in the evidence. For these reasons the court was justified in refusing the instruction.

The second instruction is fatally defective and need not be set out. The facts are not stated hypothetically, and the court is not asked to find any facts, but simply to declare that the defendant was liable in the action.

On the part of the defendant the court gave one instruction, which is as follows:

"If the court sitting as a jury shall find from the evidence that Dalgarn was neither a partner nor agent of defendant, but that defendant was in the habit of paying for poultry bought by Dalgarn for his accommodation, and that defendant had an understanding with the plaintiff's cashier that plaintiff would cash the drafts drawn by Dalgarn and credit defendant with amount of same, or send the proceeds of said drafts to defendant in order to repay defendant the money so paid for poultry, then in such case defendant is not liable on account of the failure of the drawee of such drafts to cash the same, and the finding must be for the defendant."

This instruction likewise submits the question of agency, which, as we have stated, has no place either in the pleadings or evidence. The allegation in the petition is that Dalgarn and defendant "were trading as partners in the egg and poultry business." But the error was against the defendant, and the plaintiff can not complain. In other respects the instruction submitted the defendant's theory of the evidence, which was in effect that the cashing of the orders was for the accommodation of Dalgarn with a resulting advantage to the defendant in his business as a groceryman, and that his object in notifying the bank to place to his credit the proceeds of drafts drawn by Dalgarn on shipments of poultry was not to secure the bank in the discount, but to secure himself for the advances. Under this instruction the court found that the defendant was not a partner of Dalgarn, and, as the evidence in support of the finding is abundant, we will affirm the judgment. All the judges concur.